**Supreme Court**

No. 2012-282-Appeal.
(KC 10-1618)

Walter J. Mruk, Jr.                      :

            v.                           :

Mortgage Electronic Registration Systems,    :
            Inc., et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Walter J. Mruk, Jr.      :

v.      :

Mortgage Electronic Registration Systems,   :
Inc., et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Walter J. Mruk, Jr., appeals from the entry of summary judgment in the Superior Court in favor of the defendants Mortgage Electronic Registration Systems, Inc., IndyMac Mortgage Services, OneWest Bank, FSB, and Federal National Mortgage Association.[1]  This case came before the Supreme Court for oral argument on October 30, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, the judgment of the Superior Court is vacated in part, and affirmed in part.

---

[1] The defendant, Dollar Mortgage Corp., was not a party to the motion for summary judgment. The plaintiff voluntarily dismissed the action against defendant Harmon Law Offices, PC.

# I

## Facts and Travel

On April 18, 2006, plaintiff Walter J. Mruk, Jr. (Mruk or plaintiff) executed a promissory note to Dollar Mortgage Corporation (DMC) for the sum of $236,000. The promissory note was secured by a mortgage on Mruk's real property, located at 44 Pine Tree Road in Coventry, Rhode Island. The mortgage, also dated April 18, 2006, was held by MERS as the mortgagee and the nominee for DMC. The mortgage was expressly granted to MERS "solely as nominee for [DMC] and [DMC's] successors ans [sic] assigns" and recognized that it would also be held by any successors to MERS. The mortgage also allowed for the sale of the note and the mortgage, as well as a change in the loan servicer[2] for the note and mortgage. The mortgage was recorded in the Land Evidence Records of the Town of Coventry at Book 1720, Page 801.

On April 24, 2006, DMC endorsed the promissory note to IndyMac Mortgage Services (IndyMac). In a letter dated that same day, DMC informed Mruk that IndyMac would be servicing his mortgage as of June 1, 2006.

IndyMac subsequently endorsed the note in blank.[3] On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver of IndyMac. On March 19, 2009, OneWest Bank, FSB (OneWest) acquired substantially all of the assets and mortgage servicing rights of IndyMac and,

---

[2] A loan servicer is an entity that sends out billing statements and collects payments on behalf of the owner of the note. See G.L. 1956 § 19-14.10-3(6)(i)(E) (defining "servicing mortgage loans" to "mean[], on behalf of the note holder, collecting and receiving payments * * * on obligations due and owing to the note holder pursuant to a residential mortgage loan, and, when the borrower is in default, * * * finalizing collection of the obligation through the foreclosure process").

[3] An endorsement in blank is one that "does not identify a person to whom it makes the instrument payable." G.L. 1956 § 6A-3-205 cmt. 2. "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Section 6A-3-205(b).

as a result, became the servicer of Mruk's promissory note. Deutsche Bank National Trust Company (Deutsche Bank) later became the holder of Mruk's note as custodian for OneWest.

On March 3, 2010, MERS assigned Mruk's mortgage to the Federal National Mortgage Association (FNMA).

Mruk defaulted on his mortgage in 2010. Accordingly, FNMA instituted foreclosure proceedings on the Pine Tree Road property. Notice of the foreclosure sale was advertised in the Kent County Daily Times on April 6, 2010, April 13, 2010, and April 20, 2010. At the foreclosure sale, which took place on April 27, 2010, FNMA purchased the property for the sum of $237,652.63. A foreclosure deed to FNMA was executed on May 11, 2010.

On November 4, 2010, Mruk filed the instant action in the Kent County Superior Court, seeking declaratory relief as to the validity of the foreclosure sale and the ownership of the subject property; an order quieting title to the property; and damages for negligent misrepresentation.[4] The defendants filed a motion for summary judgment on August 9, 2011. In support of their motion, defendants submitted an affidavit from Charles Boyle, the Vice President of IndyMac, a division of OneWest. The plaintiff objected to the motion. In his objection, plaintiff challenged, among other issues, the validity of the MERS assignment of the mortgage to FNMA. The plaintiff filed three affidavits, including one from a title insurer and one from an attorney who was familiar with MERS and real estate titles. Both affidavits questioned the authenticity of the signature on the mortgage assignment which was purportedly that of Andrew Harmon, the Assistant Secretary and Vice President of MERS.

In a written decision on defendants' motion filed July 10, 2012, the trial justice found that the material facts in the instant case were undisputed and largely identical to the material facts

---

[4] The plaintiff conceded that summary judgment may enter in favor of defendants on the claim of negligent misrepresentation. Accordingly, that claim is not an issue on appeal before this Court.

previously considered by him in the case of Payette v. Mortgage Electronic Registration Systems, No. PC 2009-5875, 2011 WL 3794701 (R.I. Super. August 22, 2011).[5] Accordingly, the trial justice incorporated his reasoning from Payette into his decision in the instant matter. The trial justice noted that the clear and unambiguous language of the mortgage explicitly granted MERS and its successors and assigns the statutory power of sale. The trial justice addressed plaintiff's contention that the signature on the assignment to FNMA was invalid and found that plaintiff had not submitted competent evidence to raise a genuine issue of material fact as to its authenticity. The trial justice also noted that plaintiff did not have standing to challenge the validity of the assignment because he was a stranger to the assignment. The trial justice further accepted that the statements made in the Boyle affidavit submitted by defendants were admissible and constituted competent evidence. The trial justice found that plaintiff had failed to demonstrate that a genuine issue of material fact existed which would result in the nullification of the foreclosure sale conducted by FNMA. Accordingly, the trial justice granted summary judgment in favor of defendants.

The plaintiff filed the instant appeal on August 20, 2012. The order granting defendants' motion for summary judgment and dismissing plaintiff's complaint on all counts was entered on August 27, 2012.[6]

## II

### Standard of Review

This Court reviews a trial court's grant of summary judgment de novo. See Swain v. Estate of Tyre, 57 A.3d 283, 288 (R.I. 2012). We apply the same standards and rules used by the

---

[5] The Payette case is also on appeal before this Court. Payette v. Mortgage Electronic Registration Systems, No. 2012-185-Appeal.

[6] This Court treats an appeal filed prior to the entry of a final order as if it had been timely filed. See State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1225 n.6 (R.I. 2012).

- 4 -

trial justice. See Daniels v. Fluette, 64 A.3d 302, 304 (R.I. 2013). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. See Beauregard v. Gouin, 66 A.3d 489, 493 (R.I. 2013). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." Swain, 57 A.3d at 288 (quoting Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 648 (R.I. 2011)). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Daniels, 64 A.3d at 304 (quoting Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 574 (R.I. 2012)).

## III

## Discussion

## A

## The Existence of Genuine Issues of Material Fact

On appeal, Mruk contends that the trial justice erred in holding that no genuine issues of material fact existed and that defendants were entitled to a judgment as a matter of law.[7] Mruk insists that genuine issues of material facts exist as to (1) MERS's authority to foreclose on the property when it only held the mortgage and not the note; (2) the validity of DMC's endorsement of the note to IndyMac; (3) the validity of the assignment of the mortgage from MERS to FNMA; (4) the admissibility of the Boyle affidavit as competent evidence in court; (5) the

---

[7] This Court notes that Mruk's prebriefing statement is somewhat disjointed. We will address all of plaintiff's arguments that were gleaned from our reading of his prebriefing statement.

validity of the foreclosure sale; and (6) the trial justice's "interposition" of facts from other cases and incorrect reliance upon previous Superior Court decisions. We find plaintiff's arguments to be without merit.

Initially, we note that the authority of either MERS or FNMA to foreclose on a property or the authority of MERS to assign the mortgage are questions of law and not questions of fact to be determined by a fact-finder. Further, his remaining assertions do not rise to the level of competent evidence so as to defeat a motion for summary judgment. The plaintiff's contentions are largely "barren of particularized factual support and fail to set forth any specific facts that would be admissible in evidence." Harold W. Merrill Post No. 16 American Legion v. Heirs-at-Law, Next-of-Kin and Devisees of Smith, 116 R.I. 646, 648, 360 A.2d 110, 112 (1976). "Although an opposing party is not required to disclose * * * all its evidence, he must demonstrate that he has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. National Nursing Homes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).

The plaintiff challenges the validity of DMC's endorsement of the note to IndyMac on the grounds that the endorsement was signed in blank; was not sealed; and was undated. The plaintiff's challenge to the validity of the endorsement is without merit. As the trial justice noted, plaintiff "failed to submit any evidence to this [c]ourt to illustrate the possibility of fraud with respect to the endorsement of the Note in blank." This Court has made it clear beyond peradventure that, in opposing a motion for summary judgment, "[t]he nonmoving party bears the burden of showing the existence of disputed issues of material fact by competent evidence * * * [and] cannot rest on allegations or denials in the pleadings or on conclusions or legal

- 6 -

opinions." Takian v. Rafaelian, 53 A.3d 964, 971 (R.I. 2012) (quoting Zanni v. Voccola, 13 A.3d 1068, 1071 (R.I. 2011)). The plaintiff's unsupported challenges to the validity of the endorsement in blank are not sufficient to create a disputed issue of material fact. Finally, this Court notes that Rhode Island's Uniform Commercial Code does not require that endorsements be sealed or dated and, indeed, recognizes the validity of endorsements in blank made only by the signature of the endorser. See generally G.L. 1956 § 6A-3-205 (defining special endorsements, blank endorsements, and anomalous endorsements of negotiable instruments).

The plaintiff also questions the authenticity of the signature on the mortgage assignment from MERS to FNMA. The plaintiff submitted two affidavits wherein the affiants, an attorney and a title insurer, asserted that they had reviewed many signatures purportedly made by Andrew Harmon and found noticeable differences and therefore stated that they could not be certain that the signature on the assignment was valid. The trial justice concluded that the affidavits submitted by plaintiff were insufficient to establish the existence of a genuine issue of material fact. We agree with the trial justice. It is significant that the assignment of the mortgage was signed and stamped by a notary public, verifying that it had been signed by Andrew Harmon. Moreover, the affiants both stated that they "do not know if any of [the signatures], including the signature on the assignment in this case, were signed by Andrew Harmon." This Court has made it clear that "conclusory assertions in an affidavit filed in opposition to a motion for summary judgment are inadequate to establish the existence of a genuine issue of material fact * * *." Soave v. National Velour Corp., 863 A.2d 186, 192 (R.I. 2004) (quoting Roitman & Son, Inc. v. Crausman, 120 R.I. 958, 959, 401 A.2d 58, 59 (1979) (mem.)). We note that the affidavits questioning the authenticity of the signature were made by an attorney and a title insurer, neither of whom claimed any particular expertise in handwriting or in forgeries. Bare assertions made

by nonexpert affiants in a field that is not generally understood by the lay public do not rise to the level of competent evidence which may establish the existence of a genuine issue of material fact. Cf. Estate of Giuliano v. Giuliano, 949 A.2d 386, 393-94 (R.I. 2008) (holding that the nonmovant had established the existence of a genuine issue of material fact with regard to the authenticity of a signature where the nonmovant had submitted the affidavit of a handwriting expert, which provided information concerning the affiant's expertise, summarized the examination technique the expert had employed, and gave the expert's professional opinion that the signature was not valid).

Lastly, plaintiff challenges the admissibility of the Boyle affidavit submitted by defendants. The plaintiff asserts that Boyle's familiarity with the business records and affairs of OneWest is a genuine issue of material fact. It is axiomatic that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Nichola v. Fiat Motor Co., 463 A.2d 511, 513 (R.I. 1983) (quoting Rule 56(e) of the Superior Court Rules of Civil Procedure). Affidavits that "fail[] to comply with these requirements * * * [are] useless in establishing the absence of a genuine issue of material fact." Id. We find plaintiff's challenge to the admissibility of the Boyle affidavit to be unavailing. Boyle stated that he is a vice president of IndyMac, a division of OneWest, and in that capacity, he is familiar with OneWest's business records and has personally examined the documents attached to the affidavit. We discern no error in the trial justice's determination that Boyle laid an adequate foundation to establish his personal knowledge and familiarity with the facts set forth in the affidavit. Moreover, we emphasize that plaintiff failed to submit any evidence to support his contention that Boyle's familiarity with OneWest's business records is questionable. In the

absence of any conflicting evidence, the trial justice was entitled to accept Boyle's sworn statement as true. As this Court has previously stated, "where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law." Shappy v. Downcity Capital Partners, Ltd., 973 A.2d 40, 45 (R.I. 2009) (quoting Kennedy v. Providence Hockey Club, Inc., 119 R.I. 70, 77, 376 A.2d 329, 333 (1977)).

Accordingly, we agree with the trial justice that no genuine issues of material fact existed and that the matter was ripe for summary judgment. This Court will now address whether defendants were entitled to judgment as a matter of law.

**B**

**Conclusions of Law**

**(1)**

**The Validity of the Assignment of the Mortgage to FNMA**

The plaintiff further alleges that the trial justice erred in holding that the assignment of the mortgage from "MERS as mortgagee and nominee for OneWest" was valid. The gravamen of plaintiff's argument appears to be that there was no relationship between MERS and OneWest to enable MERS to transfer an interest in the mortgage given that the mortgage itself explicitly granted the right to assign to the "Lender," i.e. DMC. The plaintiff also challenges the authority of Andrew Harmon to sign the assignment of the mortgage to FNMA since he contends that the signature was not valid and Andrew Harmon is not actually an officer of MERS.

Before this Court may address the merits of plaintiff's claims, we must first address the threshold issue of standing raised by defendants. The defendants contend that plaintiff lacks standing to challenge the assignment of the mortgage because he is not a party to the assignment. The trial justice briefly addressed the issue of standing and agreed with defendants that plaintiff

"does not have standing to challenge the validity of the assignment of transfer of the mortgage interest to which he is a stranger." The trial justice based his holding on this Court's long-standing rule that, in general, "an individual who [is] not a party to a contractual agreement lacks standing to challenge its validity." DePetrillo v. Belo Holdings, Inc., 45 A.3d 485, 492 (R.I. 2012).

The sine qua non of standing is that a plaintiff must have a personal stake in the outcome. See In re Review of Proposed Town of New Shoreham Project, 19 A.3d 1226, 1227 (R.I. 2011) (mem.) (quoting Blackstone Valley Chamber of Commerce v. Public Utilities Commission, 452 A.2d 931, 933 (R.I. 1982) (stating that "the party seeking relief [must have] alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented.")). This requirement was summarized by the United States Supreme Court in the seminal decision on standing, Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), and was adopted by this Court in Pontbriand v. Sundlun, 699 A.2d 856 (R.I. 1997). "[T]he plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks omitted). Moreover, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly * * * trace[able] to the challenged action of the defendant, and not * * * th[e] result [of] the independent action of some third party not before the court.'" Id. Lastly, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561.

In addition to these requirements, standing is generally limited to those plaintiffs asserting their own rights, not the rights of others. See Rhode Island Ophthalmological Society

- 10 -

v. Cannon, 113 R.I. 16, 27, 317 A.2d 124, 130 (1974) (emphasizing that the plaintiffs "[had] standing only because of their own injury"). This Court has stated that "there is no support for the proposition that \* \* \* an individual who is not a party to a contract may assert the rights of one of the contracting parties in order to void a contract or have it declared unenforceable." Sousa v. Town of Coventry, 774 A.2d 812, 815 n.4 (R.I. 2001). In accordance with this principle, this Court has generally held that third parties to a contract lack standing to challenge its validity. See DePetrillo, 45 A.3d at 492; Brough v. Foley, 525 A.2d 919, 922 (R.I. 1987).

The United States Court of Appeals for the First Circuit, however, while acknowledging these general principles of standing, recently held that in certain circumstances, "a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013). In analyzing the substantive law of Massachusetts, the First Circuit focused on the fact that, by statute, mortgagors have a legally cognizable right to ensure that any attempted foreclosure on their home is lawful and also that Massachusetts permits nonjudicial foreclosures. Id. at 290. The First Circuit noted that "a Massachusetts mortgagor would be deprived of a means to assert her legal protections without having standing to sue." Id. Accordingly, the First Circuit concluded that "[t]here is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law."[8] Id. at 291.

---

[8] More recently, the United States District Court of the District of Rhode Island relied on the First Circuit's reasoning in the Culhane decision and concluded that Rhode Island law also provided the same protections to mortgagors and held that mortgagors have standing to challenge "'invalid, ineffective, or void' assignments, such as situations where 'the assignor had nothing to assign or had no authority to make an assignment to a particular assignee.'" Cosajay v. Mortgage Electronic Registration Systems, Inc., 2013 WL 5912569 at \*4 (D.R.I. Nov. 5, 2013) (quoting Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013)).

It is with the basic requirements of standing in mind that this Court will begin its own analysis of the question of whether a mortgagor, although he or she is not a party to the assignment, has standing to challenge the validity of the assignment of his or her mortgage. We find it beyond dispute that a homeowner whose home is foreclosed has suffered a concrete and particularized injury that gives the homeowner a personal stake in the outcome of litigation challenging the foreclosure. We are also satisfied that there is a causal connection between the injury and the challenged action; the assignment of the mortgage is the basis of the right to foreclose being asserted by the foreclosing entity. We further find that the injury would be redressed by a decision in the plaintiff's favor; if we hold that the assignment of a mortgage was, in fact, invalid, then a foreclosure sale conducted pursuant to the invalid assignment would be unlawful and therefore void.

We recognize that our previous case law on the issue appears to be dispositive as to the issue of standing. We do not waver from these previous holdings that, in general, strangers to a contract lack standing to either assert rights under that contract or challenge its validity. See DePetrillo, 45 A.3d at 492. We conclude, however, as did the First Circuit, that "these cases paint with too broad a brush." Culhane, 708 F.3d at 290. In particular, we emphasize that, unlike the usual third parties to contracts, the homeowners here are not attempting to assert the rights of one of the contracting parties; instead, the homeowners are asserting their own rights not to have their homes unlawfully foreclosed upon. Mortgagors in Rhode Island, no less than in Massachusetts, are in the unusual position of facing a possible eviction from their homes at the hands of an entity with which they lack privity. Absent standing to challenge the assignment by which the purported authority to foreclose has been derived, homeowners would be without legal recourse to contest this injury. We do not choose to close the courthouse doors entirely to such

homeowners. Accordingly, we hold that homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose.

In so holding, we emphasize that this exception to the general rule precluding third-party standing to challenge a contract is narrow and confined to the circumstances of a mortgagor challenging an "invalid, ineffective, or void" assignment of the mortgage. See Culhane, 708 F.3d at 291. "[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Id. We further reiterate that this exception is confined to private residential mortgagors challenging the foreclosure of their homes.

With these limitations in mind, we turn to Mruk's allegations challenging FNMA's status as a lawful mortgagee. Mruk asserts that MERS never transferred legal title, that Harmon's purported signature on the assignment is false, and that Harmon did not have the authority to execute a valid assignment even if his signature was genuine. If correct, any assignment of the mortgage and subsequent foreclosure would be invalid, ineffective, or void. Accordingly, Mruk has standing to pursue his claims.

Because we conclude that Mruk has cleared the hurdle of standing, we will now address the merits of his claims. Mruk's challenge to MERS' authority to transfer legal title appears to be premised on the fact that MERS was not also the holder of the note. This Court recently addressed the question of whether MERS, as the nominee for the owner of the note, could also be the mortgagee and exercise the statutory power of sale, and concluded that it could. See Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1084-85 (R.I. 2013). Further, this Court held that the note and the mortgage did not need to be held by one entity. This Court concluded

that the transactional structure whereby equitable title to the mortgage was held by the lender and by each of its successors and assigns—in this case, DMC as the lender and IndyMac, OneWest, and Deutsche Bank as its successors and assigns—while MERS held legal title to the mortgage was consistent with the law of this state. Id. at 1088. In such a situation, this Court reasoned that "the note and the equitable interest in the mortgage have always remained unified, and the mortgage has 'followed the note.' Furthermore, the holder of the legal title to the mortgage—MERS—always has acted as an agent of the owner of the equitable title." Id. Accordingly, plaintiff's argument that MERS could not have transferred legal title to its assignee because it was not also the holder of the note is unavailing.

Finally, plaintiff's challenges to the validity of Harmon's signature on the assignment and his authority to sign are equally without merit. The plaintiff has offered no competent evidence to support his assertion that Harmon is not actually a corporate officer of MERS and, as previously discussed, the affidavits disputing the validity of Harmon's signature were insufficient to create a genuine issue of material fact. Absent any competent evidence on the record to cast doubt upon the validity of the assignment, this Court cannot and does not disagree with the trial justice's conclusion that the assignment of the mortgage to FNMA was valid and that, therefore, FNMA had the authority to exercise the statutory power of sale.

**(2)**

**The Validity of the Foreclosure Sale**

Mruk contends that the foreclosure sale was invalid because, under the statutory power of sale provision in the mortgage, only the lender had the power to exercise the power of sale. The plaintiff bases his argument entirely on the provision in the mortgage which sets forth the procedures by which the lender may exercise the statutory power of sale. The plaintiff contends

- 14 -

that the trial justice erroneously ignored that paragraph in the mortgage in concluding that FNMA, which was neither the lender nor an assignee of the lender, could have exercised the statutory power of sale. We find plaintiff's argument to be without merit.

We begin by noting that, in addition to the section of the mortgage cited by plaintiff, an earlier provision in the mortgage explicitly granted the statutory power of sale to MERS and to "the successors and assigns of MERS[.]" The mortgage at issue in <u>Bucci</u> contained substantially equivalent language regarding the lender's authority to exercise the power of sale and granting MERS and its successors the power of sale. See <u>Bucci</u>, 68 A.3d at 1081. In <u>Bucci</u>, we held "that [the] subsequent provision [granting lender the power of sale] did 'not negate the previous language in the [m]ortgage directly granting MERS * * * the right to' foreclose and sell the property." <u>Id.</u> We see no reason why our holding in <u>Bucci</u> should not apply to the case at bar.

We note that the facts in <u>Bucci</u> differ from the situation in the case before us because in <u>Bucci</u>, MERS did not assign the mortgage and initiated the foreclosure proceedings itself. We do not find, however, that this distinction carries weight. The mortgage explicitly granted the power of sale to MERS <u>and its successors and assigns</u>. Moreover, <u>Bucci</u> makes it clear that under our statutes, MERS may exercise the power of sale under a mortgage on behalf of the noteholder. See <u>Bucci</u>, 68 A.3d at 1085. It follows that, when MERS assigned its interest in the mortgage to FNMA, FNMA acquired all the rights which MERS possessed. See <u>Rhode Island Construction Services, Inc. v. Harris Mill, LLC</u>, 68 A.3d 450, 456 (R.I. 2013) (stating as a "basic legal principle" that an assignee possesses all the rights and remedies possessed by or available to the assignor). Accordingly, we agree with the trial justice that FNMA possessed the statutory

power of sale by way of assignment from MERS and had the right to exercise the power of sale upon Mruk's default.[9]

# V

## Conclusion

For the reasons set forth in this opinion, we hold that the plaintiff had standing to challenge the validity of the assignment of the mortgage. In all other respects, the judgment of the Superior Court is affirmed. The records in this case may be returned to the Superior Court.

---

[9] We likewise deem plaintiff's final assertions that the trial justice erroneously interposed facts from other cases into the instant case and failed to view the facts of this case in an independent light to be without merit. The plaintiff cites no case law in support of his contention that the trial justice could not look to the rationale of prior Superior Court cases to guide his reasoning in the case at bar. While Superior Court decisions are not binding on us, we discern no error in the trial justice's conclusion that the facts of this case are nearly identical to the facts previously considered by him in the case of Payette v. Mortgage Electronic Registration Systems, No. PC 2009-5875, 2011 WL 3794701 (R.I. Super. Aug. 22, 2011). Indeed, we find that the trial justice's analysis of the issues was specific and tailored to the facts in the case at bar and we cannot fault the trial justice's consideration of the merits of plaintiff's arguments.

**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*



**TITLE OF CASE:**       Walter J. Mruk, Jr. v. Mortgage Electronic Registration Systems, Inc., et al.

**CASE NO:**       No. 2012-282-Appeal.
(KC 10-1618)

**COURT:**       Supreme Court

**DATE OPINION FILED:**   December 19, 2013

**JUSTICES:**       Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**       Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**     Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Corey J. Allard, Esq.

For Defendants:  Charles C. Martorana, Esq.